# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 10-5506 (JAP) |
| v. | : | |
| | : | |
| DR. MANDELL et al., | : | **OPINION** |
| | : | **APPLIES TO ALL ACTIONS** |
| Defendants. | : | |
| | : | |
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-0841 (JAP) |
| v. | : | |
| | : | |
| ANNE KLEIN FORENSIC CENTER, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-0842 (JAP) |
| v. | : | |
| | : | |
| CHRISTIE TODD WHITMAN, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-0843 (JAP) |
| v. | : | |
| | : | |
| ALEX DAVIS, | : | |
| | : | |
| Defendant. | : | |

|  |  |  |
|---|---|---|
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-0844 (JAP) |
| v. | : | |
| | : | |
| JAMESBURG DETENTION HOME, | : | |
| | : | |
| Defendant. | : | |

|  |  |  |
|---|---|---|
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-0845 (JAP) |
| v. | : | |
| | : | |
| JAMES FORSYTHE #43618, | : | |
| | : | |
| Defendant. | : | |

|  |  |  |
|---|---|---|
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-2778 (JAP) |
| v. | : | |
| | : | |
| DR. ROBERT ROTH, | : | |
| | : | |
| Defendant. | : | |

|  |  |  |
|---|---|---|
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-2779 (JAP) |
| v. | : | |
| | : | |
| DR. B. MARTY, | : | |
| | : | |
| Defendant. | : | |

JOEL JERMAINE BACON,      :

         :

      Plaintiff,   :   Civil Action No. 12-2883 (JAP)

     v.      :

         :

ATLANTIC CITY POLICE,     :

         :

      Defendant.  :

         :

JOEL JERMAINE BACON,      :

         :

      Plaintiff,   :   Civil Action No. 12-3055 (JAP)

     v.      :

         :

MR. JOHN MANE et al.,     :

         :

      Defendants.  :

         :

JOEL JERMAINE BACON,      :

         :

      Plaintiff,   :   Civil Action No. 12-3056 (JAP)

     v.      :

         :

ANNE KLEIN FORENSIC CENTER et al., :

         :

      Defendants.  :

         :

JOEL JERMAINE BACON,      :

         :

      Plaintiff,   :   Civil Action No. 12-3169 (JAP)

     v.      :

         :

THOMAS KAZANES et al.,     :

         :

      Defendants.  :

         :

| | | |
|---|---|---|
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-3170 (JAP) |
| v. | : | |
| | : | |
| RASHON JOHNSON, | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-3217 (JAP) |
| v. | : | |
| | : | |
| M.S.O. SYLVESTER, | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-3272 (JAP) |
| v. | : | |
| | : | |
| TRENTON STATE PRISON, | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-3273 (JAP) |
| v. | : | |
| | : | |
| ALL MEDICAL STAFF et al., | : | |
| | : | |
| Defendants. | : | |

JOEL JERMAINE BACON,                    :
                                        :
                    Plaintiff,          :      Civil Action No. 12-3274 (JAP)
            v.                          :
                                        :
ALL REHAB STAFF et al.,                 :
                                        :
                    Defendants.         :
_____      :
                                        :
JOEL JERMAINE BACON,                    :
                                        :
                    Plaintiff,          :      Civil Action No. 12-3390 (JAP)
            v.                          :
                                        :
DOCTORS SUPERVISORS et al.,             :
                                        :
                    Defendants.         :
_____      :
                                        :
JOEL JERMAINE BACON,                    :
                                        :
                    Plaintiff,          :      Civil Action No. 12-3391 (JAP)
            v.                          :
                                        :
ALL MSO'S AND SR MSO'S et al.,          :
                                        :
                    Defendants.         :
_____      :
                                        :
JOEL JERMAINE BACON,                    :
                                        :
                    Plaintiff,          :      Civil Action No. 12-3392 (JAP)
            v.                          :
                                        :
KITCHEN SUPERVISORS et al.,             :
                                        :
                    Defendants.         :
_____      :

JOEL JERMAINE BACON,

           Plaintiff,      :     Civil Action No. 12-3393 (JAP)

      v.

ALL KITCHEN STAFF et al.,

           Defendants.

---

JOEL JERMAINE BACON,

           Plaintiff,      :     Civil Action No. 12-3479 (JAP)

      v.

SR. M.S.O. LOPEZ,

           Defendant.

---

JOEL JERMAINE BACON,

           Plaintiff,      :     Civil Action No. 12-3494 (JAP)

      v.

STATE OF NEW JERSEY,

           Defendant.

---

JOEL JERMAINE BACON,

           Plaintiff,      :     Civil Action No. 12-3575 (JAP)

      v.

ATLANTIC CITY PRESS,

           Defendant.

JOEL JERMAINE BACON,                :

                    Plaintiff,       :        Civil Action No. 12-3580 (JAP)
             v.                      :

SURVEILLANCE SECURITY,              :

                    Defendant.       :

JOEL JERMAINE BACON,                :

                    Plaintiff,       :        Civil Action No. 12-3694 (JAP)
             v.                      :

ALL DOCTORS et al.,                 :

                    Defendants.      :

JOEL JERMAINE BACON,                :

                    Plaintiff,       :        Civil Action No. 12-4341 (JAP)
             v.                      :

ALL TREATMENT TEAMS et al.,         :

                    Defendants.      :

JOEL JERMAINE BACON,                :

                    Plaintiff,       :        Civil Action No. 12-4511 (JAP)
             v.                      :

THE ATLANTIC CITY PRESS,            :

                    Defendant.       :

|  |  |  |
|---|---|---|
| JOEL JERMAINE BACON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-5230 (JAP) |
| v. | : | |
| | : | |
| SUPERVISOR 1ST 2ND 3RD SHIFT | : | **OPINION** |
| | : | **APPLIES TO ALL ACTIONS** |
| Defendants. | : | |
| | : | |

PISANO, District Judge:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Bacon v. Burns*, Civil Action No. 10-5484 (JBS)

Plaintiff is a civilly committed individual who commenced his initial case in this District

on October 22, 2010; that case was assigned to Judge Jerome B. Simandle ("Judge Simandle").

See Bacon v. Burns ("Bacon v. Burns"), Civil Action No. 10-5484 (JBS) (D.N.J. Oct 22, 2010).

The pro se complaint in Bacon v. Burns, as well as the pro se amended complaint filed in that

matter on December 23, 2010, alleged that, during a certain period of Plaintiff's confinement, he

was subjected to involuntary medication with the anti-psychotic drug Haldol in violation of his

constitutional rights.  See Bacon v. Burns, Docket Entry No. 1.  On April 13, 2011, the

defendants in Bacon v. Burns filed their first motion for summary judgment, challenging

Plaintiff's claims which, at that point, were still argued pro se.  See id. Docket Entries Nos. 13

and 14.

On November 15, 2011, Judge Simandle granted the defendants' motion in part and denied it in part, allowing the sole remaining defendant to file a supplemental motion for summary judgment.[1]  See id. Docket Entries Nos. 25 and 26.

In connection with resolving the first motion for summary judgment, Judge Simandle made the following factual finding:

> On June 1, 2009, the Plaintiff was transferred from Ann Klein Forensic Center to Ancora Psychiatric Hospital in Hammonton, New Jersey.   . . . Dr. Elizabeth Burns . . . the treating psychiatrist for the Plaintiff at Ancora  Psychiatric Hospital from September 22, 2009 to January 13, 2010.  Dr. Burns diagnosed the Plaintiff with Schizoaffective Disorder Bipolar Type, a major mental illness.  Shortly after Dr. Burns began treating the Plaintiff, Dr. Burns prescribed several medications, including Haldol, for his psychiatric disorder. . . .  Dr. Burns concluded in her professional opinion that the prescribed medications, including Haldol, were a necessary part of the Plaintiff's treatment plan. . . .  On December 3, 2009, Dr. Burns initiated the Three Step Process followed by Ancora Psychiatric Hospital in accordance with New Jersey Administrative Bulletin 5:04 for administering psychotropic medication to a non-consenting patient.  Dr. Burns certified that the Plaintiff would harm himself or others without the medication . . . .

Bacon v. Burns, 2011 U.S. Dist. LEXIS 132148, at *1-3 (D.N.J. Nov. 15, 2011) (citations omitted).

In February 2012, that is, about a year and a half after commencing his Bacon v. Burns action, Plaintiff ceased proceeding pro se in that matter, since Judge Simandle appointed two attorneys to act as Plaintiff's pro bono counsel for the purposes of Plaintiff's opposition to that

---

[1]  Specifically, ruling on the record accompanying the defendants' initial motion for summary judgment, Judge Simandle found a genuine issue of material fact as to whether defendant Dr. Elizabeth Burns ("Dr. Burns") sufficiently followed the requirements of the three step process set forth by N.J.A.B. 5:04 when she prescribed a chain of involuntary medications to Plaintiff with Haldol. That supplemental motion was filed on December 14, 2011. See id., Docket Entries Nos. 30 and 31.

supplemental motion and the remainder of Bacon v. Burns action. See id. Docket Entries Nos. 35, 36, 37, 51 and 52. As of now, that motion is still pending.

### B. First Duplicative Case: *Bacon v. Mandell*

Meanwhile, on October 25, 2010, Plaintiff submitted another civil complaint; that complaint also asserted that his constitutional rights were violated by the same chain of involuntary medications. See Bacon v. Madnell ("Bacon v. Madnell"), Civil Action No. 10-5506 (JAP) (D.N.J. Oct. 25, 2010). This Court, presiding over the Bacon v. Madnell matter, directed administrative termination of Bacon v. Madnell as facially duplicative of Bacon v. Burns. See Bacon v. Madnell, Civil Action No. 10-5506, Docket Entry No. 2. In response, Plaintiff applied for appointment of pro bono counsel and submitted a letter asserting that Bacon v. Mandel was closed in error. See id. Docket Entries Nos. 4 and 5. The Court construed these applications as Plaintiff's motion for reconsideration and denied the same by an order issued on December 1, 2010. See id. Docket Entry No. 6.

### C. Second Duplicative Case: *Bacon v. Adetunji*

On February 8, 2011, Plaintiff submitted another civil complaint asserting that his rights were violated by the same chain of involuntary medications. See Bacon v. Adetunji ("Bacon v. Adetunji"), Civil Action No. 11-0706 (JBS) (D.N.J. Feb. 8, 2011), Docket Entry No. 1.

Since Plaintiff's complaint in Bacon v. Adetunji was subject to dismissal on the grounds already articulated twice by this Court in Bacon v. Madnell, Judge Simandle directed termination of Bacon v. Adetunji as duplicative. See Bacon v. Adetunji, Civil Action No. 11-0706, Docket Entry No. 2 (relying on the explanations provided by this Court in Bacon v. Madnell). That termination took place on March 21, 2011. See id. at 3.

### D.     Six Cases Commenced at the Beginning of 2012

During the first few months of 2012, Plaintiff submitted six new civil complaints, thus commencing six new actions in this District.  Specifically, Plaintiff initiated Bacon v. Dupree ("Bacon v. Dupree"), Civil Action No. 12-0784 (assigned to Judge Simandle),[2] and five matters assigned to the undersigned, namely: Bacon v. Anne Klein Forensic Center ("Bacon v. AKFC"), Civil Action No. 12-0841; Bacon v. Whitman ("Bacon v. Whitman"), Civil Action No. 12-0842; Bacon v. Davis ("Bacon v. Davis"), Civil Action No. 12-0843; Bacon v. Jamesburg Detention Home for Boys ("Bacon v. Jamesburg"), Civil Action No. 12-0844; and Bacon v. Forsythe ("Bacon v. Forsythe"), Civil Action No. 12-0845.

In Bacon v. AKFC, Plaintiff asserted that he was "falsely convicted of crime and put in double jeopardy"; he sought monetary damages in the amount of "eight billion dollars" on the basis of his belief that his conviction and/or civil confinement were illegal.  The Court

---

[2] Judge Simandle directed termination of Bacon v. Dupree, explaining as follows:

Plaintiff alleged — once again — that his rights were violated by the same chain of involuntary injections . . . .  Plaintiff's repeated filings suggest Plaintiff's erroneous impression that he could recover multiple damages on the basis of the same factual predicate.  The Court, therefore, notes that, while a litigant may raise alternative legal theories in support of his/her claims, see Fed. R. Civ. P. 8(d), or may name more than one defendant in his/her complaint asserting a violation ensuing from a certain factual predicate, see Fed. R. Civ. P. 19 (providing for joinder of parties), and, upon prevailing on his/her claims, that litigant could have the damages apportioned among the wrongdoers or ordered for collection jointly and severally, the litigant cannot obtain more than one recovery on the basis of the wrongful transaction (or the same chain of wrongful transactions).  "The general rule of compensatory damages bars double recovery for the same wrong." Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1005 (9th Cir. 2008);  see also Guy. Tel. & Tel. Co. v. Melbourne Int'l Communs., 329 F.3d 1241, 1249 (11th Cir. 2003); Pate v. National Fund Raising Consultants, 20 F.3d 341, 345 (8th Cir. 1994).

Bacon v. Dupree, Docket Entry No. 2, at 5-7, 2012 U.S. Dist. LEXIS 27699 at *6-7.

determined that this application for monetary relief was facially premature under the holding of

Heck v. Humphrey, 512 U.S. 477 (1994), while Plaintiff's request for release from confinement

was subject to dismissal for lack of jurisdiction, since that request was of habeas nature.  See

Bacon v. Anne Klein Forensic Ctr., 2012 U.S. Dist. LEXIS 71018 (D.N.J. May 21, 2012).

However, out of abundance of caution, the Court granted leave to Plaintiff to file an amended

complaint in Bacon v. AKFC and reserved the determination as to whether Plaintiff's application

for appointment of pro bono counsel should be granted.[3]

In Bacon v. Whitman, Plaintiff alleged that a certain "Christie Todd Whitman"[4] violated

Plaintiff's rights because she "endangered the welfare of a child" since she "put criminal charges

on a child that were meant to protect children but instead put this child in a dangerous position

for the rest of his life on Megans as a juvenile child 14 years old."  Bacon v. Whitman, Docket

Entry No. 1.  In connection with this allegation, Plaintiff sought "88 zillion dollars."  Id.  The

Court ruled on Plaintiff's Bacon v. Whitman challenges as follows:

---

[3]  Plaintiff's application for appointment of pro bono counsel in Bacon v. AKFC was
denied without prejudice by Magistrate Judge Tonianne J. Bongiovanni ("Judge Bongiovanni")
in light of the Court's termination of the action.

[4]  The Court presumes that Plaintiff's reference to "Christie Todd Whitman" was intended
to be a reference to Christine Todd Whitman ("Governor Whitman"), that is, New Jersey 50th
Governor who served her term between 1994 and 2001.  Prior to her term as New Jersey
Governor, Governor Whitman worked for the Republican National Committee, the U.S. Office
of Economic Opportunity, a New York City educational program, the Somerset County Board of
Chosen Freeholders and the New Jersey Board of Public Utilities; she left the Office of New
Jersey Governor upon her appointment to the U.S. Environmental Protection Agency; she is
currently on the Boards of Texas Instruments and United Technologies, and a co-chair of the
CASEnergy Coalition.  See Republican Leadership Counsel, Bio - Christine Whitman,
<<http://www.republican-leadership.com/bios/christie-whitman>>. Having no legal degree,
Governor Whitman did not serve as a prosecutor or as legal counsel of any kind.  See id.

Even if this Court were to hypothesize that Plaintiff refers to himself as "the child" at issue (since, otherwise, Plaintiff's claims would necessarily be subject to dismissal for lack of standing), it is self-evident that Governor Whitman could not have any personal involvement in Plaintiff's criminal prosecution or in procurement of his order of civil commitment, since - at no point in her career - Governor Whitman acted as an attorney, moreover a prosecutor. Therefore, even reading Plaintiff's claim in the light most favorable to Plaintiff, this Court can construe his Bacon v. Whitman challenge only as an assertion that Governor Whitman violated Plaintiff's rights by being New Jersey Governor during the time when either Plaintiff's criminal prosecution or his civil commitment proceedings were taking place. However, at most, this claim implicates Governor Whitman only in her supervisory capacity, as the State's top administrative official. That claim is facially meritless, since challenges based on solely on the respondeat superior theory are not cognizable under Section 1983.

Bacon v. Anne Klein Forensic Ctr., 2012 U.S. Dist. LEXIS 71018, at *11-12 (citations omitted).

Consequently, as with Bacon v. AKFC, the Court dismissed Plaintiff's Bacon v. Whitman challenges without prejudice to filing of amended pleading and reserved its determination as to whether appointment of pro bono counsel was warranted.[5]

In Bacon v. Davis, Plaintiff alleged that a certain "Alex Davis" committed medical malpractice by forcefully injecting Plaintiff with Haldol (apparently, per Dr. Burn's orders); in connection with that assertion, Plaintiff maintained that he was allergic to Haldol and sought "2 billion dollars." See Bacon v. Davis, Docket Entry No. 1. However, Judge Simandle's decision in Bacon v. Burns – and the underlying record filed in that matter – established that Plaintiff had no allergic reaction to Haldol. See, generally, Bacon v. Burns, 2011 U.S. Dist. LEXIS 132148 at *5 (describing Plaintiff's treatment). Correspondingly, this Court dismissed Plaintiff's Bacon v. Davis challenges for lack of diversity jurisdiction (necessary to support a state-law medical

_____

[5] Plaintiff's application for appointment of pro bono counsel in Bacon v. Davis was denied without prejudice by Magistrate Judge Bongiovanni in light of the Court's termination of the action.

malpractice claim) and as barred by the doctrine of <u>res judicata</u> in light of Judge Simandle's

factual findings made in <u>Bacon v. Burns</u>.  <u>See</u> <u>Bacon v. Anne Klein Forensic Ctr.</u>, 2012 U.S.

Dist. LEXIS 71018, at *12-13.   However, as with <u>Bacon v. AKFC</u> and <u>Bacon v. Whitman</u>, the

Court dismissed Plaintiff's <u>Bacon v. Davis</u> challenges with leave to file an amended complaint;

the Court also reserved its determination as to appointment of <u>pro bono</u> counsel.[6]

In <u>Bacon v. Jamesburg</u>, Plaintiff named "Jamesburg Detention Home for Boys"[7] as the

sole defendant; he asserted that this defendant "[d]id not treat for crime with facts of finding and

brought no legal law[]yers for child." <u>Bacon v. Jamesburg</u>, Docket Entry No. 1.  In connection

with that assertion, Plaintiff sought "one million eight hundred thousand dollars" in damages. <u>Id.</u>

The Court pointed out that Plaintiff's <u>Bacon v. Jamesburg</u> challenges were defective

for a number of reasons.  First, a detention center is not a "person" within the
meaning of a § 1983 suit.  Furthermore, even if this Court were to presume that
Plaintiff wished to name facility staff (rather than the facility itself) as Defendant,
the facility staff – being employees of a place of confinement – had no duty to
obtain, and no role in obtaining, legal representation for Plaintiff.  Finally, even
presuming that Plaintiff merely wished to assert that he was wrongfully convicted
or civilly committed, his claims would be barred by <u>Heck</u> on the grounds already
articulated by this Court with regard to <u>Bacon v. AKFC,</u> as his challenges would
be premature.

<u>Bacon v. Anne Klein Forensic Ctr.</u>, 2012 U.S. Dist. LEXIS 71018, at *14-15 (citations omitted).

----

[6]  Plaintiff's application for appointment of <u>pro bono</u> counsel in <u>Bacon v. Whitman</u> was
denied without prejudice by Magistrate Judge Bongiovanni in light of the Court's termination of
the action.

[7]  In New Jersey, juvenile detention centers are secure facilities for minors; such facilities
are full-care institutions providing all services on the grounds of the facility, including such
services as school education, vocational programs, counseling, and medical services. <u>See</u> State of
New Jersey, Juvenile Justice Commission, Introduction to the JJC, <<http://www.nj.gov/oag/jjc/
aboutus_intro.html>>.

Nonetheless, as in <u>Bacon v. AKFC</u>, <u>Bacon v. Whitman</u> and <u>Bacon v. Davis</u>, the Court dismissed Plaintiff's <u>Bacon v. Jamesburg</u> allegations without prejudice and reserved the issue of whether appointment of <u>pro bono</u> counsel was warranted.[8]

Finally, in <u>Bacon v. Forsythe</u>, Plaintiff alleged that a certain "Forsythe," who apparently was an inmate, violated Plaintiff's rights because Forsythe "lied on Joel Bacon about a crime [thus] destroying someone's life."  <u>Bacon v. Forsythe</u>, Docket Entry No. 1.  Plaintiff clarified that the alleged lie took place during Forsythe's testimony before a certain judge; in connection with this allegation Plaintiff sought "1.28 billion dollars."  <u>Id.</u>  The Court dismissed these challenges since witnesses are absolutely immune from civil suit for damages based upon their testimony.  <u>See</u> <u>Bacon v. Anne Klein Forensic Ctr.</u>, 2012 U.S. Dist. LEXIS 71018, at *15.

As in <u>Bacon v. AKFC</u>, <u>Bacon v. Whitman</u>, <u>Bacon v. Davis</u> and <u>Bacon v. Jamesburg</u>, the Court dismissed Plaintiff's <u>Bacon v. Forsythe</u> claims with leave to amend and reserved the issue of whether appointment of <u>pro bono</u> counsel was warranted.[9]

---

[8]  Plaintiff's application for appointment of <u>pro bono</u> counsel in <u>Bacon v. Jamesburg</u> was denied without prejudice by Magistrate Judge Bongiovanni in light of the Court's termination of the action.

[9]  Plaintiff's application for appointment of <u>pro bono</u> counsel in <u>Bacon v. Forsythe</u> was denied without prejudice by Magistrate Judge Bongiovanni in light of the Court's termination of the action.

E.      **Recent Influx of Cases**

Shortly after his commencement of <u>Bacon v. AKFC</u>, <u>Bacon v. Whitman</u>, <u>Bacon v. Davis</u>, <u>Bacon v. Jamesburg</u> and <u>Bacon v. Forsythe</u>, Plaintiff initiated twenty-three other matters in this District.[10]

1.      ***Bacon v. Roth***

In <u>Bacon v. Roth</u>, Civil Action No. 12-2778 (JAP) (D.N.J. May 8, 2012), Plaintiff asserted, once again, that he was unduly subjected to forced medication; in connection with this claim, Plaintiff requested "one billion dollars" in damages.  <u>See</u> <u>id.</u> Docket Entry No. 1. Although Plaintiff's <u>Bacon v. Roth</u> challenges are facially duplicative of those raised un <u>Bacon v. Burns</u> (and of those dismissed in <u>Bacon v. Mandell</u> and <u>Bacon v. Adetunji</u>), Plaintiff has applied for appointment of <u>pro</u> <u>bono</u> counsel in  <u>Bacon v. Roth</u> in an apparent hope to have a legal counsel help him litigate these duplicative challenges.

2.      ***Bacon v. Marty***

In <u>Bacon v. Marty</u>, Civil Action No. 12-2779 (JAP) (D.N.J. May 8, 2012), Plaintiff asserted that a certain "Dr. Marty" was "neglecting" Plaintiff by not responding to Plaintiff's phone calls and by promising Plaintiff to keep "neglecting" Plaintiff's calls to "Dr. Marty's hospital."  <u>See</u> <u>id.</u> Docket Entry No. 1.  In connection with this claim, Plaintiff requested "one billion dollars" in damages.  <u>See</u> <u>id.</u>  Plaintiff's <u>Bacon v. Marty</u> challenges appears facially meritless, since Plaintiff had no constitutional right in phone calls to a doctor or a hospital

---

[10]  Plaintiff's commencement of these matters was accompanied by his frequent phone calls to the Clerk's Office.  It is the Court's understanding that, on some days, Plaintiff has called the Clerks office as many as fourteen or more times with improper requests or questions, thus depriving other litigants of scarce court resources.

(moreover to the doctor or hospital of Plaintiff's choice).  Plaintiff has applied for appointment of pro bono counsel in  Bacon v. Marty.

### 3.   *Bacon v. Atlantic City Police*

In Bacon v. Atlantic City Police, Civil Action No. 12-2883 (JAP) (D.N.J. May 8, 2012), Plaintiff – who is and has been for many years confined in state facilities – asserted, without any clarification, "police brutality, excessive force and attempted murder."  See id. Docket Entry No. 1.  In connection with this new line of claims, Plaintiff sought "eighteen billion dollars" in damages.  See id.  Plaintiff's Bacon v. Atlantic City Police challenges appear time barred and wholly divorced from any viable factual predicate.  Plaintiff has applied for appointment of pro bono counsel in  Bacon v. Atlantic City Police.

### 4.   *Bacon v. Mane*

In Bacon v. Mane, Civil Action No. 12-3055 (JAP) (D.N.J. May 23, 2012), Plaintiff asserted that a certain Mr. Mane who "runs Anne Klein Forensic Center" violated Plaintiff's rights because Mr. Mane "told his officers to violate [Plaintiff's] freedom of speech [since Plaintiff] couldn't say what [he] wanted to say."  See id. Docket Entry No. 1.

In connection with this claim, Plaintiff sought "88 billion dollars" in damages.  See id. Plaintiff's Bacon v. Mane challenges appear to be lacking a constitutional claim and, in addition, are based on nothing but non-cognizable in Section 1983 actions doctrine of respondeat superior. Plaintiff has applied for appointment of pro bono counsel in  Bacon v. Mane.

### 5.   *Bacon v. AKFC*, Second Action

In Bacon v. Anne Klein Forensic Center, Civil Action No. 12-3056 (JAP) (D.N.J. May 23, 2012), Plaintiff asserted that "all staff" of the Anne Klein Forensic Center (specifically, the

first, second and third shifts of the staff) violated "all [his] rights."  See id. Docket Entry No. 1.

In connection with this claim, Plaintiff sought "1 trillion dollars" in damages.  See id.  This

second round of Plaintiff's Bacon v. AKFC challenges either do not state a claim or contain

allegations facially failing to meet the requirements of Rule 8, as clarified in Iqbal.  Plaintiff has

applied for appointment of pro bono counsel in this second  Bacon v. AKFC action.

### 6.     *Bacon v. Kazanes*

In Bacon v. Kazanes, Civil Action No. 12-3069 (JAP) (D.N.J. May 29, 2012), Plaintiff

asserted that a certain Mr. Kazanes, who is a patient held in the Anne Klein Forensic Center,

"assaulted" Plaintiff "with [a] book."  See id. Docket Entry No. 1.  In connection with this claim,

Plaintiff sought "1 million dollars" in damages.  See id.  Plaintiff's Bacon v. Kazanes challenges

appear to be defective for failure to meet the color-of-law requirement.  Plaintiff has applied for

appointment of pro bono counsel in Bacon v. Kazanes.

### 7.     *Bacon v. Johnson*

In Bacon v. Johnson, Civil Action No. 12-3170 (JAP) (D.N.J. May 29, 2012), Plaintiff

asserted that a certain Mr. Johnson, who is a "client" (which the Court presumes is a term used

by Plaintiff to describe another patient held in the Anne Klein Forensic Center), "assaulted"

Plaintiff "with closed fist."  See id. Docket Entry No. 1.  In connection with this claim, Plaintiff

sought "1 million dollars" in damages.  See id.  Plaintiff's Bacon v. Johnson challenges appear to

be defective for the same reason as the claims raised in Bacon v. Kazanes, i.e., for failure to meet

the color-of-law requirement.  Plaintiff has applied for appointment of pro bono counsel in

Bacon v. Johnson.

8.      ***Bacon v. M.S.O. Sylvester***

In <u>Bacon v. M.S.O. Sylvester</u>, Civil Action No. 12-3069 (JAP) (D.N.J. May 30, 2012), Plaintiff asserted that a certain Officer Sylvester made "terroristic threats" by telling Plaintiff, during "October" of an unspecified year, that Officer Sylvester would "get [Plaintiff] hurt."  <u>See id.</u> Docket Entry No. 1.  In connection with this claim, Plaintiff sought "1 million dollars" in damages.  <u>See id.</u>  Plaintiff's <u>Bacon v. M.S.O. Sylvester</u> challenges appear to be ripe for dismissal for failure to assert a valid failure-to-protect or conditions-of-confinement claim and/or as speculative, and/or as untimely.  Plaintiff has applied for appointment of <u>pro bono</u> counsel in <u>Bacon v. M.S.O. Sylvester</u>.

9.      ***Bacon v. Trenton State Prison***

In <u>Bacon v. Trenton State Prison</u>, Civil Action No. 12-3272 (JAP) (D.N.J. May 31, 2012), Plaintiff asserted that the prison violated his rights by having Plaintiff confined in a "laboratory testing facility against [his] will."  <u>See id.</u> Docket Entry No. 1.  In connection with this claim, Plaintiff sought "1 trillion dollars" in damages.  <u>See id.</u>  Plaintiff's <u>Bacon v. Trenton State Prison</u> challenges appear to be defective since a prison is not a "person" within the meaning of Section 1983 and, even if Plaintiff's claims were construed as challenges against the prison staff, these claims are either <u>Heck</u>-barred or subject to dismissal for lack of habeas jurisdiction (that is, to the degree these claims were meant to seek release from confinement).  Plaintiff has applied for appointment of <u>pro bono</u> counsel in <u>Bacon v. Trenton State Prison</u>.

10.      ***Bacon v. All Medical Staff***

In <u>Bacon v. All Medical Staff</u>, Civil Action No. 12-3273 (JAP) (D.N.J. May 31, 2012), Plaintiff asserted that a certain unspecified medical staff "violated [his] patient['s] bill of rights

illegally and disrespectfully."  See id. Docket Entry No. 1.  In connection with this claim, Plaintiff sought "8 billion dollars" in damages.  See id.  Plaintiff's Bacon v. All Medical Staff challenges appear defective for failure to assert a conditions-of-confinement claim.  Plaintiff has applied for appointment of pro bono counsel in this Bacon v. All Medical Staff.

### 11.    *Bacon v. All Rehab Staff*

In Bacon v. All Rehab Staff, Civil Action No. 12-3274 (JAP) (D.N.J. May 31, 2012), Plaintiff asserted that "all rehab staff" violated Plaintiff's rights because they failed to "rehabilitate" him.  See id. Docket Entry No. 1.  In connection with this claim, Plaintiff sought the amount of "8 billion dollars" in damages.  See id.  Plaintiff's Bacon v. All Rehab Staff challenges appear defective for failure to assert a valid denial-of-medical-care claim.  Plaintiff has applied for appointment of pro bono counsel in Bacon v. All Rehab Staff.

### 12.    *Bacon v. Doctors Supervisors*

In Bacon v. Doctors Supervisors, Civil Action No. 12-3390 (JAP) (D.N.J. June 4, 2012), Plaintiff asserted that certain unspecified "Doctors Supervisors" violated his rights by failing to cure Plaintiff.  See id. Docket Entry No. 1.  In connection with this claim, Plaintiff sought "8 billion dollars" in damages.  See id.  Plaintiff's Bacon v. Doctors Supervisors challenges appear to ripe for dismissal for failure to assert a valid denial-of-medical-care claim.  Plaintiff has applied for appointment of pro bono counsel in Bacon v. Doctors Supervisors.

### 13.    *Bacon v. All M.S.O's*

In Bacon v. All M.S.O's, Civil Action No. 12-3391 (JAP) (D.N.J. June 4, 2012), Plaintiff asserted that certain unspecified "all M.S.O's" "disrespected and violated" his unspecified rights. See id. Docket Entry No. 1.  In connection with this claim, Plaintiff again sought "8 billion

dollars" in damages.  See id.  Plaintiff's Bacon v. All M.S.O's challenges appear to be subject to dismissal for failure to assert a valid conditions-of-confinement claim.  Plaintiff has applied for appointment of pro bono counsel in Bacon v. All M.S.O's.[11]

### 14.  *Bacon v. Kitchen Supervisors*

In Bacon v. Kitchen Supervisors, Civil Action No. 12-3392 (JAP) (D.N.J. June 4, 2012), Plaintiff asserted that certain unspecified "Kitchen Supervisors" violated his unspecified rights simply because these supervisors "did not help [someone unspecified in the complaint] to prepare food."  See id. Docket Entry No. 1.  In connection with this claim, Plaintiff sought the familiar amount, i.e., "8 billion dollars" in damages.  See id.  Although Plaintiff's Bacon v. Kitchen Supervisors challenges were subject to dismissal for failure to assert a constitutional challenge, Plaintiff applied for appointment of pro bono counsel in Bacon v. Kitchen Supervisors hoping that a legal counsel would be appointed to litigate these claims.[12]

### 15.  *Bacon v. Kitchen Supervisors*, Second Action

In Bacon v. Kitchen Supervisors, Civil Action No. 12-3393 (JAP) (D.N.J. June 4, 2012), Plaintiff asserted that certain unspecified "Kitchen Supervisors" violated his unspecified rights because these supervisors "did not feed [him his] right meal."  See id. Docket Entry No. 1.  In connection with this claim, Plaintiff sought "8 billion dollars" in damages.  See id.  Plaintiff's

---

[11]  Plaintiff's original application for appointment of pro bono counsel in Bacon v. All M.S.O's was denied without prejudice by Magistrate Judge Bongiovanni as premature; plaintiff had not yet filed an application to proceed *in forma pauperis* ("IFP").  Plaintiff subsequently filed his application and renewed his application for counsel.

[12]  Plaintiff's original application for appointment of pro bono counsel in Bacon v. Kitchen Supervisors was denied without prejudice by Magistrate Judge Bongiovanni as premature; plaintiff had not yet filed an application to proceed IFP.  Plaintiff subsequently filed his application and renewed his application for counsel.

second round of <u>Bacon v. Kitchen Supervisors</u> challenges appear subject to dismissal for failure to assert a valid conditions-of-confinement claim.[13]  Plaintiff has applied for appointment of <u>pro bono</u> counsel in this second <u>Bacon v. Kitchen Supervisors</u> action.[14]

### 16.   *Bacon v. M.S.O. Lopez*

In <u>Bacon v. M.S.O. Lopez</u>, Civil Action No. 12-3479 (JAP) (D.N.J. June 11, 2012), Plaintiff asserted that a certain M.S.O. Lopez violated Plaintiff's rights because M.S.O. Lopez "assaulted [a certain] patient with [a] minor infraction" causing that patient the "need [for] needles in [his] body."  <u>See</u> <u>id.</u> Docket Entry No. 1.  In connection with this claim, Plaintiff sought "88 billion dollars" in damages.  <u>See</u> <u>id.</u>  Plaintiff's challenge in this case appears to have been raised without proper standing.  Plaintiff has applied for appointment of <u>pro bono</u> counsel in <u>Bacon v. M.S.O. Lopez</u>.

### 17.   *Bacon v. State of New Jersey*

In <u>Bacon v. State of New Jersey</u>, Civil Action No. 12-3494 (JAP) (D.N.J. June 11, 2012), Plaintiff asserted that the State violated his rights by failing to release him from confinement (or by failing to move him to a certain camp).  <u>See</u> <u>id.</u> Docket Entry No. 1.  In connection with this claim, Plaintiff sought "1 million dollars" in damages.  <u>See</u> <u>id.</u>  Plaintiff's claims challenging the selection of his place of confinement facially fails to state a cognizable claim, while his claims challenging the fact of his confinement were either <u>Heck</u>-barred or subject to dismissal for lack

---

[13]  There is no information in the record and no assertion in the pleadings suggesting that Plaintiff requires a certain religious and health-based diet.

[14]  Plaintiff's original application for appointment of <u>pro bono</u> counsel in the second <u>Bacon v. Kitchen Supervisors</u> action was denied without prejudice by Magistrate Judge Bongiovanni; plaintiff had not yet filed an application to proceed IFP.  Plaintiff subsequently filed his application and renewed his application for counsel.

of habeas jurisdiction (that is, to the degree Plaintiff wished to seek release).  Plaintiff has applied for appointment of pro bono counsel in Bacon v. State of New Jersey.

### 18.    *Bacon v. Atlantic City Press*

In Bacon v. Atlantic City Press, Civil Action No. 12-3575 (JAP) (D.N.J. June 11, 2012), Plaintiff asserted that a newspaper violated his rights because it "put a juvenile in jeopardy" by "put[ting that] juvenile['s] name in the paper."  See id. Docket Entry No. 1.  In connection with this claim, Plaintiff sought "88 billion dollars" in damages.  See id.  Plaintiff's claims appear facially subject to dismissal for failure to meet the color-of-law requirement.  Plaintiff has applied for appointment of pro bono counsel in Bacon v. Atlantic City Press.

### 19.    *Bacon v. Surveillance Security*

In Bacon v. Surveillance Security, Civil Action No. 12-3580 (JAP) (D.N.J. June 13, 2012), Plaintiff asserted that a certain "surveillance security" "d[id]n't have cameras in every camp."  See id. Docket Entry No. 1.  In connection with this claim, Plaintiff sought "1 million dollars" in damages.  See id.  Plaintiff's allegations fail to state a cognizable constitutional challenge.  Plaintiff has applied for appointment of pro bono counsel in Bacon v. Surveillance Security.

### 20.    *Bacon v. All Doctors*

In Bacon v. Surveillance Security, Civil Action No. 12-3694 (JAP) (D.N.J. June 18, 2012), Plaintiff re-asserted an already familiar claim, namely, that certain unspecified doctors "treated [Plaintiff] irrespo[n]sibl[]y" by violating Plaintiff's "patient['s] bill of rights."  See id. Docket Entry No. 1.  In connection with this claim, Plaintiff sought "88 billion dollars" in damages.  See id.  Plaintiff's negligence-based allegations fail to state a valid constitutional

denial-of-medical-care claim.  Plaintiff applied for appointment of <u>pro</u> <u>bono</u> counsel in <u>Bacon v.</u>
<u>All Doctors</u>.

### 21.   *Bacon v. All Treatment Teams*

In <u>Bacon v. All Treatment Teams</u>, Civil Action No. 12-4341 (JAP) (D.N.J. July 13,
2012), Plaintiff cryptically asserted that unspecified "treatment teams" "did not notify to help."
<u>See</u> <u>id</u>. Docket Entry No. 1.  In connection with this claim, which does not suggest presence of
any constitutional challenges, Plaintiff sought his favorite amount of "8 billion dollars" in
damages.  <u>See</u> <u>id</u>.  Plaintiff has applied for appointment of <u>pro</u> <u>bono</u> counsel in <u>Bacon v. All</u>
<u>Treatment Teams</u>.

### 22.   *Bacon v. Atlantic City Press*, Second Action

In <u>Bacon v. Atlantic City Press</u>, Civil Action No. 12-4511 (JAP) (D.N.J. July 18, 2012),
Plaintiff repeated, verbatim, his challenges stated in the first <u>Bacon v. Atlantic City Press</u> action;
he also demanded the same monetary relief.  As in his first <u>Bacon v. Atlantic City Press</u> action,
Plaintiff applied for appointment of <u>pro</u> <u>bono</u> counsel in this second <u>Bacon v. All Doctors</u> action
in hope to have a legal counsel litigate these apparently barred-by-the-color-of-law-requirement
claims.

### 23.   *Bacon v. AKFC*, Third Action

In <u>Bacon v. [Anne Klein Forensic Center] Supervisors [of] 1st [and] 2nd [and] 3rd Shift</u>,
Civil Action No. 12-5230 (JAP) (D.N.J. Aug. 17, 2012), Plaintiff asserted that certain
unspecified "supervisors" of the Anne Klein Forensic Center violated his rights because these
supervisors "were suppose[d] to help [Plaintiff] stay safe from [other] patients and staff [but did
not]."  <u>See</u> <u>id</u>. Docket Entry No. 1.  In connection with this claim, Plaintiff sought the amount of

"8 billion dollars" in damages.  See id.  This third round of Plaintiff's Bacon v. AKFC challenges

fails to state a failure-to-protect claim (and, in addition, stated allegations insufficient due to

being based solely on the respondeat superior theory).  Plaintiff has applied for appointment of

pro bono counsel in this third  Bacon v. AKFC.

### F.    Total Amount of Submissions Made In Matters Presented to This Court

Factoring out all Plaintiff's applications pending before and resolved by Judge Simandle,

i.e., focusing solely on the cases presented to this Court, the Court notes that Plaintiff, as of now,

has submitted at least (a) 29 original complaints; (b) 2 amended complaints; (c) 34 applications

for appointment of pro bono counsel; (d) 9 letters; and (e) 31 in forma pauperis applications,

jointly producing a total of 564 pages.

## II.    RELEVANT CONSIDERATIONS

A number of legal considerations appear highly relevant to the cluster of cases at bar.

The Court, therefore, finds it warranted to summarize these considerations.

### A.    Rule 8 Considerations

It is axiomatic that Section 1915(e)(2)(B)(i) "authorizes the dismissal of a[n IFP action]

as factually frivolous if a court determines that the contentions are clearly baseless."  Deutsch v.

United States, 67 F.3d 1080, 1085 (3d Cir. 1995).  "[A] finding of factual frivolousness is

appropriate when the facts alleged rise to the level of the irrational or the wholly incredible,

whether or not there are judicially noticeable facts available to contradict them."[15]  Denton v.

_____

[15]  The term "frivolous," as used in §1915(e)(2), includes not only inarguable legal
conclusions but also fanciful factual allegations.  See Neitzke v. Williams, 490 U.S. 319, 325
(1989).  Therefore, courts are afforded authority to dismiss those claims which factual
contentions are clearly baseless, see id; see also Denton v. Hernandez, 504 U.S. 25, 32-33
(1992), and the district courts within the Third Circuit have followed this rule.  See Barnes v.

Hernandez, 504 U.S. 25, 33 (1992). Correspondingly, when determining whether a pleading is frivolous, the Court need not accept the factual allegations as true, but must "pierce the veil" of the pleading to determine whether the allegations are "fanciful," "fantastic" or "delusional."  Id.

However, dismissal of allegations as "fanciful," "fantastic" or "delusional" is never made lightly, since the court are mindful of the guidance that "[merely] improbable allegations [should not be] dismiss[ed] as frivolous without any factual development [since, to do so, would be] to disregard the age-old insight that many allegations might be 'strange, but true; for truth is always strange, [s]tranger than fiction.'" Denton v. Hernandez, 504 U.S. 25, 33 (1992) (quoting Lord Byron, Don Juan, canto XIV, stanza 101 (T. Steffan, E. Steffan, & W. Pratt eds. 1977)).

Therefore, where allegations cannot be readily qualified as "clearly baseless," id., the courts screen complaints under the Rule 8 standard.  For the purposes of such screening, it is long established that a court should "accept as true all of the [factual] allegations in the complaint." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nonetheless, the Third

---

Mercer County Court House, 2007 U.S. Dist. LEXIS 40742 (D.N.J. June 5, 2007) (dismissing claim that food served to inmates at correctional facility was hazardous to human health); Frazier v. Southwoods State Prison, 2006 U.S. Dist. LEXIS 20832 (D.N.J. Apr. 17, 2006) (allegations that a tracking device was secretly implanted into an inmate's tooth so a satellite would track his movements around the prison facility were fanciful, fantastic or delusional); Armstead v. Briggs, 2004 U.S. Dist. LEXIS 3588 (D. Del. Feb. 17, 2004) (dismissing claim requesting that the court set up an appointment for the plaintiff with President George W. Bush so that she could tell him that she had filed a lawsuit seeking his permanent appointment as the President of the United States); Noble v. Becker, 2004 U.S. Dist. LEXIS 480 (D. Del. Jan. 15, 2004) (claims that government officials and others had engaged in a vast conspiracy to violate his constitutional rights were delusional); Williams v. Werster, 1994 U.S. Dist. LEXIS 8901 (E.D. Pa. June 30, 1994) (plaintiff's claim that he had uncovered evidence of a conspiracy by the former mayor to commit sabotage and espionage in order to establish ecclesiastical law and in some way interfere with U.S. commerce were fanciful, fantastic, or delusional); Robinson v. Love, 1994 U.S. Dist. LEXIS 7503 (E.D. Pa. 1994) (where plaintiff alleged that he was subjected to witchcraft and attempts to poison him with cyanide, the allegations were fanciful, fantastic or delusional).

Circuit has always directed district courts not to credit bald assertions or legal conclusions improperly alleged in the complaint, see Burlington Coat Fact. Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997), and – addressing the clarifications as to the litigant's pleading requirement stated by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) – provided the district courts with guidance as to what pleadings are sufficient to pass muster under Rule 8.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  Specifically, the Court of Appeals observed:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' . . . ." Twombly, 127 S. Ct. at 1964-65 . . ."[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  Id. at 1966.  [Hence] "factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965 & n.3.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United States Supreme Court in

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> [In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555.  [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.  Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'"  Id. at 557 (brackets omitted).  [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[, i.e., by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . .  It is the conclusory nature of [these] allegations . . . that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of]

pleadings does not turn [on] the discovery process.  Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint asserts some wrongs] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope of developing actual facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

The Third Circuit pointed out that Iqbal hammered the "final-nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[16] which was applied to federal complaints before Twombly.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  Since Iqbal, the Third Circuit has, in no ambiguous terms, instructed district courts to conduct, with regard to allegations amenable to Rule 8 review, the following analysis:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  [See Iqbal, 129 S. Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief" [in light of the definition of "plausibility" provided in Iqbal.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S. Ct. at 1949-50 (emphasis supplied)].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Fowler, 578 F.3d at 210-11.

_____

[16]  The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

Correspondingly, where the allegations cannot be immediately qualified as "fanciful," "fantastic" or "delusional," the district court may dismiss a litigant's allegations on merits only for failure to state a claim within the meaning of Rule 8, as interpreted in Iqbal and Fowler. Moreover, in determining the sufficiency of a pro se complaint, the district court must be mindful to construe the plaintiff's allegations liberally, see Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992), and – paramountly here – make "all reasonable [legal] inferences that can be drawn" from the factual predicate alleged in such complaint.  Morse, 132 F.3d at 906.  Which, in turn, means that a pro se plaintiff need not state any legal causes: all (s)he has to state are the facts of his/her challenges, and the court, sua sponte, would make every plausible legal inference on behalf of such pro se plaintiff.  See Twombly, 550 U.S. at 570 (a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face"); Browne v. Folino, 2011 U.S. Dist. LEXIS 115193, at *16 (W.D. Pa. Sept. 9, 2011) (citing Twombly and Haines v. Kerner, 404 U.S. 519, 520 (1972), to point out that "[p]laintiff need only plead facts that state a plausible claim for relief [since p]laintiff enjoys the liberal review of his pleadings afforded to all pro se litigants"); see also Spellman v. Am. Eagle Express, Inc., 2011 U.S. Dist. LEXIS 53521, at *3 (E.D. Pa. May 18, 2011)  ("In the first step, which is assessed early in the litigation process, the plaintiff . . . must make only a 'modest factual showing'"); accord Imoore v. Gasbarro, 2012 U.S. Dist. LEXIS 73114, at *16 (D.N.J. May 24, 2012) (citing Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999), which – in turn – quoted DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990), "for the observation that a pleading must [merely] indicate 'the who, what, when, where, and how: the first paragraph of any newspaper story'"); cf., Hoffenberg v. Grondolsky,

2011 U.S. Dist. LEXIS 3786, at *18 (D.N.J. Jan. 14, 2011)  ("the Court explained to [plaintiff that he had] to plead his claims by asserting facts, and facts only, in a clear and concise statement"), aff'd in part, remanded on other grounds, Hoffenberg v. Bumb, 446 Fed. App'x 394 (3d Cir. 2011).

### B.  Section 1915 As the Key Provision For Appointing *Pro Bono* Counsel

A civil litigant possesses no constitutional right to legal representation.  See Parham v. Johnson, 126 F.3d 454, 456 (3d Cir. 1997).  However, a district court may request an attorney to represent a person who has been granted permission to proceed in forma pauperis in the action and is unable to afford counsel.  See 28 U.S.C. § 1915(e)(1).  That being said, since pro bono time is a precious and limited commodity, the appointment of counsel should be given consideration only if the claim has "some merit in fact and law."  Parham, 126 F.3d at 457; see also Bragg v. Agarwal, 2009 U.S. Dist. LEXIS 109090 (D.N.J. Nov. 23, 2009).

In determining whether to grant a litigant's motion for appointment of pro bono counsel under Section 1915(e)(1), the court must consider the following factors: (1) the plaintiff's ability to present his or her case based on such factors as education, literacy, prior work experience, prior litigation experience, the substantive nature of the claim, and/or the ability to understand English; (2) the complexity of the legal issues involved and the lawyering skills required for an effective presentation of the claim; (3) whether the claims are likely to require extensive discovery or compliance with complex discovery rules; and (4) whether the case is likely to turn on credibility determinations or if expert testimony is necessary.  See Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993)).  Under Section 1915(e)(1), district courts enjoy broad discretion to request an attorney to represent an indigent civil litigant, see id. at 153, although "Tabron [expressly]

repudiated" the notion that "appointment of counsel is warranted only upon a showing of special circumstances indicating the likelihood of substantial prejudice to plaintiff resulting from plaintiff's probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Powell v. Symons, 680 F.3d 301, 310 n. 9 (3d Cir. 2012) (quoting Tabron, 6 F.3d at 155) (internal quotation marks omitted).  Hence, there is no doubt that, under Section 1915(e)(1), the district court should give a serious and careful consideration to appointing counsel each time it appears that an indigent plaintiff with *a claim of arguable merit* is incapable of presenting his/her own case.  See Tabron, 6 F.3d at 156 ("[T]he district court must consider as a threshold matter the merits of the plaintiff's claim. 'Before the court is justified in exercising its discretion in favor of appointment, it must first appear that the claim has some merit in fact and law'") (quoting, inter alia, Maclin v. Freake, 650 F.2d 885, 887 (7th Cir. 1981), which, in turn, quoted Spears v. United States, 266 F. Supp. 22, 25-26 (S.D.W. Va. 1967)).

### 1.    Prohibition Against Counsel's Filing Frivolous Claims

Under Tabron, the presence of a potentially meritorious claim is a threshold requirement for appointment of counsel.  See Tabron, 6 F.3d at 156; Maclin, 650 F.2d at 887; Spears, 266 F. Supp. At 25-26; accord Parham, 126 F.3d at 457 (appointment of counsel is warranted only if the pleading contains "some merit in fact and law").  This gateway requirement is closely intertwined with the prohibition on appointed counsel's maintaining frivolous claims.  "Under Anders [v. California, 386 U.S. 738 (1967)], if court-appointed 'counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request

permission to withdraw.'" United States v. Parker, 2012 U.S. App. LEXIS 14525, at *4 (3d Cir.

July 16, 2012) (quoting Anders, 386 U.S. at 744).

**2.      Appointment of Pro Bono Counsel In Light of Anders Considerations**

The Court of Appeals' decision in United States v. Turner, 677 F.3d 570 (3d Cir. 2012)[17]

is important for the purposes of the case at bar, since Turner drew an important legal-ethics-

based perimeter on the issue of pro bono appointment.[18]  Indeed, it appears self-evident that no

court shall appoint a litigant pro bono counsel if such counsel, by complying with the mandate of

such pro bono appointment, would necessarily violate the rules of ethics.

---

[17]  In Turner, the litigant's "counsel filed what might be called a 'quasi-Anders brief,'
which raised a combination of colorable and frivolous arguments. . . .  In addition to . . . two
[colorable] arguments [detected by counsel], counsel raised nine issues [which the litigant
insisted on raising, while] explaining why the[se nine] issues [appeared wholly] frivolous" to
counsel.  Turner, 677 at 574.  The Court of Appeals ruled that counsel's action were entirely
inappropriate.  See id. at 566-68 (noting that, "[a]lthough we have no doubt that [the brief] was
well-intentioned and counsel were no doubt perplexed as to what to do, the brief was improper"
since "counsel['s] conten[tion] that 'the ethical rules [implicitly] create[d] an obligation to
present any or all arguments which the [litigant] insists be raised" was meritless in light of the
ethical provision clearly stating that "a layer 'shall not assert or controvert an issue unless there is
a basis in law and fact for doing so that is not frivolous'") (original ellipses omitted, citing
McCoy v. Court of Appeals of Wis., Dist. 1, 486 U.S. 429, 436 (1988), for the proposition that
"[a]n attorney, whether appointed or paid, is . . . under an ethical obligation to refuse to prosecute
a frivolous appeal").

[18]  It appears that the guidance provided in Turner applies to both civil and criminal
matters and to scenarios where civil litigants obtain pro bono counsel.

> [C]ourts have found no distinction between appointed and retained counsel when
> considering the adequacy of representation, see Cuyler v. Sullivan, 446 U.S. 335,
> 344-45, and n.9 (1980), or the preservation of the attorney-client relationship, see
> Slappy v. Morris, 649 F.2d 718, 721 (9th Cir. 1981), cert. granted, 456 U.S. 904
> (1982).

United States v. Gipson, 693 F.2d 109, 111 (10th Cir. 1982); accord  McCoy, 486 U.S. at 436.

> All lawyers [practicing in the State of New Jersey] obligate themselves to . . .
> abide by the Rules of Professional Conduct adopted by the Supreme Court of New
> Jersey.  Those who violate these standards . . . are subject to discipline . . . .

In re Telfair, 745 F. Supp. 2d 536, 563-64 (D.N.J. 2010) (quoting the Office of Attorney Ethics

("OAE") website at <<http://www.judiciary.state.nj.us/oae/atty_disc/atty_disc.htm>>, original

brackets removed).[19]

Thus, while on one hand, a lawyer is obligated to represent his/her client zealously, see

RPC-ABA, preamble, parts (2) and (4) ("As a representative of clients, . . . a lawyer [must]

zealously assert[] the client's position under the rules of the adversary system"); see also

RPC-ABA, D.R. 1.3, comments 1 and 3 ("A lawyer should pursue a matter on behalf of a client

despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever

lawful and ethical measures are required to vindicate a client's cause or endeavor.  A lawyer must

also act with commitment and dedication to the interests of the client and with zeal in advocacy

upon the client's behalf"), a lawyer cannot present to a court any facially meritless claims.

Indeed, the RPC-ABA and State's Rules of Professional Conduct strongly stress this very point:

> A lawyer shall provide competent representation to a client.  . . .  A lawyer must . .
> . act with commitment and dedication to the interests of the client and with zeal in
> advocacy upon the client's behalf.  A lawyer is not bound, however, to press for
> every advantage that might be realized for a client.  For example, a lawyer may
> have authority to exercise professional discretion in determining the means by
> which a matter should be pursued.  . . .  A lawyer shall not . . . assert . . . an issue .
> . . unless there is a basis in law and fact for doing so that is not frivolous . . . .  The
> advocate has a duty . . . not to abuse legal procedure.  The law, both procedural

---

[19]  New Jersey Rules of Professional conduct largely follow the Model Rules of
Professional Conduct offered by the American Bar Association ("RCP-ABA"); RCP-ABA, as
modified by applicable federal statutes/regulations, interpreted by case law and affected by
relevant rules of federal procedure, are the Rules that govern this District's review of ethical
obligations of any counsel practicing in this District.  See In re Telfair, 745 F. Supp. 2d at 567
(detailing the workings of Local Civ. R. 103.1, which governs such review).

> and substantive, establishes the limits within which an advocate may proceed. . . .
> What is required of lawyers . . . is that they inform themselves about the facts of
> their clients' cases and the applicable law and determine [whether] they can make
> good faith arguments in support of their clients' positions. . . .  The [lawyer's]
> action is frivolous . . . if the lawyer is unable either to make a good faith argument
> on the merits of the action taken or to support the action taken by a good faith
> argument . . . .  A lawyer shall not knowingly . . . make a false statement of fact or
> law . . . .

RPC-ABA, D.R. Nos. 1.1, 1.2(a), 2.1, 3.1, 3.3 (a)(1) and comments 1 and 2 to D.R. 3.1; <u>accord</u>

<<http://www.judiciary.state.nj .us/oae/atty_disc/atty_disc.htm>> (reflecting OAE guidance to

litigants that their lawyers' "disagreement about how a case should be handled — or should have

been handled — does not constitute unethical conduct, even if the outcome of the case is

disappointing [for the lawyer's client. Indeed, t]here [might be] situations that a client may find

most annoying . . . that [would] not constitute unethical conduct. An example would be the

lawyer's failure to consult with the client prior to writing every letter or prior to filing every

document in the client's case").  In light of the foregoing, including the holding of <u>Turner</u>, it

appears that appointment of <u>pro</u> <u>bono</u> counsel for the purposes of counsel's filing either a motion

brief or even a pleading (be it an original or amended) on behalf of his/her indigent client would

be wholly inappropriate unless the appointing court can make, with a sufficient degree of

certainty, a determination that the indigent litigant seeking <u>pro</u> <u>bono</u> counsel appointment

actually has a claim of arguable merit.

### C.    Rule 17 Considerations

While, on its face, Fed. R. Civ. P. 17(c)(2) does not make any express references to

appointment of <u>pro</u> <u>bono</u> counsel, the Rule is nonetheless highly pertinent to the Court's analysis.

Rule 17(c)(2) of the Federal Rules of Civil Procedure provides that:

> A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a *guardian ad litem — or issue another appropriate order —* to protect a minor or incompetent person who is unrepresented in an action.

Powell v. Symons, 680 F.3d 301, 303 (3d Cir. 2012) (quoting the Rule; original emphasis removed in part).[20]  While the Rule expressly authorizes appointment of a guardian ad litem,[21] the Rule's reference to "other appropriate orders" allows the courts to resort to other measures, including appointments of conservators,[22] jura tertii[23] and pro bono counsel.[24]

---

[20]  The meaning of "incompetence" under penal law differs from that in civil cases. Hence, the fact that a litigant was found (un)fit to stand criminal trial sometimes in the past does not necessarily dispose of the issue whether (s)he has competence, within the meaning of Rule 17, to prosecute a civil action at the instant juncture.  Cf. Zaro v. Strauss, 167 F.2d 218 (5th Cir. 1948).

[21]  Guardianship ad litem shall not be confused with general guardianship.  See, e.g., Teele v. Kerr, 261 N.C. 148, 150 (1964) ("A [general] guardian is authorized . . . to take possession of all [the ward's] estate for the use of his ward and to bring all necessary actions therefor. [In contrast, a guardian ad litem provision] merely authorizes [an incompetent] plaintiff without a general guardian to appear by their next friend when it is necessary for them to prosecute an action. The power of a next friend is strictly limited to the performance of the precise duty imposed upon him by the order appointing him, that is, the prosecution of the particular action in which he was appointed").  Moreover, the federal courts are altogether without jurisdiction to appoint a "general" guardian if they are proceeding under Rule 17(c).  See, e.g., United States v. Maryans, 803 F. Supp. 1378, 1379 (N.D. Ind. 1992) (appointment of a general guardian under Rule 17(c) "would interfere unduly with state probate and guardianship laws. . . . [C]ases that can be found suggest that the authority granted by Rule 17(c) is limited"); accord (Southern Ohio Sav. Bank & Trust Co. v. Guaranty Trust Co., 27 F. Supp. 485 (D.N.Y. 1939) (a federal court is without power to appoint guardian ad litem if incompetent is already represented by a committee/guardian appointed by court of state in which federal court is held).

[22]
>      In some states, it makes no difference that the guardian is known as a ["]committee,["] ["]conservator,["] or ["]curator,["] or by some other title, but in others, ["]conservatorship["] means] a less drastic procedure not conclusive and sometimes not even probative on the issue of incompetency.

Restatement (Second) of Contracts § 13, comment c (1979); accord Sexual Orientation and the Law, § 4.06 (Roberta Achtenberg, ed. 1993) (the difference between a "conservatorship" and a

While the foregoing observation suggests certain ties between Rule 17(c) and 28 U.S.C. § 1915(e)(1), Rule 17(c) considerations might differ from those ensuing from the statutory mandate.  See McCaslin by McCaslin v. Radcliff, 168 F.R.D. 249, 1996 U.S. Dist. LEXIS 10726 (D. Neb. 1996) (under Rule 17(c), duties of lawyer for the party and duties of guardian ad litem for that party are entirely different, since it is not a function of the guardian ad litem to serve as lawyer, and vice-versa), aff'd without op. sub nom, McCaslin v County of York, 141 F.3d 1169, reported in, 1998 U.S. App. LEXIS 3227 (8th Cir. 1998).  Moreover, the "life-span" of a guardian ad litem appointment and a pro bono counsel appointment, even if for the same litigant, might differ too, since certain actions by the litigant might bring to an end the pro bono

---

"guardianship," in jurisdictions that provide for both, is that a guardianship usually requires a finding of legal incompetency, while a conservatorship only requires a finding of incapacity).

   [23]  Under the "next friend" doctrine, jus tertii standing allows a third person to file and pursue a claim in court on behalf of someone who is unable to do so on his or her own.  The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case in controversy" requirement set forth in the Article III of the Constitution.  See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990).  In Whitmore, the Court set out two requirements that should be met by the one seeking to qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [he] seeks to litigate" (and it has been further suggested that a "'next friend' must have some significant relationship with the real party in interest"); and (2) "the 'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability – why the real party in interest cannot appear on his own behalf to prosecute the action."  Id. at 163-64.

   [24]  In New Jersey, state courts defined the difference between an advocate and a guardian ad litem as follows: unlike a court-appointed attorney, who is an advocate for the client, a guardian ad litem acts as the "eyes of the court to further the 'best interests' of the alleged incompetent."  See In re Mason, 701 A.2d 979, 983 (N.J. Super. Ch. Div. 1997).  Thus, an attorney acts an advocate who "subjectively represents the client's intentions," while a guardian ad litem is an "independent fact finder and an investigator for the court [who] objectively evaluates the best interests of the alleged incompetent."  Id.

appointment but leave the guardian ad litem appointment wholly unaffected.[25]  Hence, a Rule

17(c) appointment of a single representative who is a legal counsel could yield a scenario where

such representative, being obligated to effectively wear "two hats" by acting as both a guardian

ad litem and pro bono counsel, might find himself/herself caught in a limbo, being either unable

to continue wearing both these hats (if, e.g., this representative becomes conflicted in his/her

capacity as a lawyer after the client sues the lawyer for refusal to press frivolous claims) or

_____

[25]  While an attorney's continuous representation of the client who threatens the attorney with the danger of *future* termination of appointment (or with the danger of having a disciplinary grievance filed against that attorney) does not necessarily introduce an actual conflict of interest into the attorney's conduct, see, e.g., United States v. Rodriguez, 612 F.3d 1049 (8th Cir. 2010) (finding no conflict of interest on the part of defense attorney whose client threatened him with filing a disciplinary grievance, since "appointed counsel could not have 'gleaned any advantage for himself in disciplinary proceedings before the state bar by failing to employ his best exertions on the [defendant's] behalf at trial'") (quoting United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993), and citing Winfield v. Roper, 460 F.3d 1026, 1040 (8th Cir. 2006), Carter v. Armontrout, 929 F.2d 1294, 1299-1300 (8th Cir. 1991), and Smith v. Lockhart, 923 F.2d 1314, 1321 n.11 (8th Cir. 1991)), an appointed pro bono counsel might become unavoidably conflicted if his/her indigent client's actually files a disciplinary grievance or commences a civil action, e.g., a legal malpractice action on the basis of counsel's refusal to file an Anders brief or Anders-like pleading, against the appointed counsel.  See ABA-RCP 1.7(a)(2) and ABA-RPC 1.7(b)(1) (providing, jointly, that "a lawyer shall not represent a client if . . . there is a significant risk that the representation . . . will be materially limited . . . by a personal interest of the lawyer [unless] the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation"); accord NJ RPC 1.7(a)(2) and NJ RPC 1.7(b)(2) (stating virtually the same).   In contrast, a ward's filing of an action challenging his/her  appointed representative's decision not to foster a meritless claim is unlikely to create a conflict for the purposes of the representative's guardian ad litem appointment.  Cf. Redeker, The Right of an Abused Child to Independent Counsel and the Role of the Child Advocate in Child Abuse Cases, 23 Vill. L. Rev. 521, 527-29 (1977-1978) (guardianship conflicts may, for instance, arise due to accusations against an usual decision-maker); Adelman v. Graves, 747 F.2d 986 (5th Cir. 1984) (when complaint alleges conflict of interest between incompetent person and guardian, trial court must determine whether incompetent person's interests would be adequately protected if represented by guardian rather than another representative); accord Mainor v. Nault, 120 Nev. 750 (2004) (attorney's conflict is necessarily present only if the attorney represent an already-conflicted guardian);  Schindler v. Schiavo, 780 So. 2d 176 (Fla. Dist. Ct. App. 2d Dist. 2001) (a guardian and a ward's disagreement over the proceeds of a successful law suit might give basis for disqualification of the guardian).

withdrawing from wearing both of them (since this representative would be conflicted in his/her capacity as a guardian ad litem). Cf. Robert B. Fleming & Rebecca C. Morgan, Lawyers' Ethical Dilemmas: A "Normal" Relationship When Representing Demented Clients and Their Families, 35 Ga. L. Rev. 735, 740 (2001) ("[In the context of] an incapacity proceeding, the lawyer's duty is to protect the client's . . . rights, to advise the client . . . to the extent that the client can understand such explanations . . . and to evaluate the [conduct of the] guardian"); Gale v. Wagg, 140 F. Supp. 6 (D. Mich. 1956) (since any appointed Rule 17(c) guardian/counsel would be unable to foster facially meritless claims desired by an incompetent client, it is the court's obligation to dismiss the pleading without any appointment because "[t]he appointment of a guardian[/counsel] would merely prolong the agony" of meritless litigation).

### 1.    Due Process Requirements

Federal Rule of Civil Procedure 17(a) provides that "every action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). Importantly, "[a] guardian ad litem [or any other appointee obtaining his/her mandate under Rule 17(c)] is a nominal party only; the ward is the real party in interest." Charles Alan Wright et al., Federal Practice and Procedure § 1548, at 373-74 (2d ed. 1990). Because a litigant, being the real party in interest, possesses liberty interests in avoiding the stigma of being found incompetent, see Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971), and in retaining personal control over the litigation, Due Process Clause of the Fifth Amendment limits the district court's discretion with respect to appointing a guardian ad litem. See Mathews v. Eldridge, 424 U.S. 319, 332 (1976); accord Thomas v. Humfield, 916 F.2d 1032, 1033-34 (5th Cir. 1990). To determine the amount of process due, the district court must weigh: (a) the private interest affected by the official action;

(b) the risk of an erroneous deprivation of that interest through the procedures used, and the

probable value of additional or different procedural safeguards; and (c) the government's interest.

See, e.g., Abdullah v. I.N.S., 184 F.3d 158, 164 (2d Cir. 1999) (citing Mathews, 424 U.S. at

334-35); see also Gilbert v. Homar, 520 U.S. 924, 931-32 (1997).  Furthermore, the district court

must consider these three factors while bearing in mind the particular context of the decision to

appoint a guardian ad litem.  See Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Due process

is flexible and calls for such procedural protections as the particular situation demands").  For

instance, a formal evidentiary hearing before appointing a guardian ad litem is not a mandatory

feature of Rule 17 analysis,[26] especially in light of "the availability of post-appointment review

and because of [the litigant's] questionable competence at the time the decision [directing a Rule

17(c) appointee] was made."  Neilson v. Colgate-Palmolive Co., 199 F.3d at 651-52.[27]

---

[26]  See Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 652 (2d Cir. 1999) (concluding that "it was reasonable for the district court, in that circumstance, to decide that there would be little probable value to a formal, adversary hearing" by relying on Goldberg v. Kelly, 397 U.S. 254, 268-69 (1970), where the Supreme Court observed that "[t]he opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard," and on Gray Panthers v. Schweiker, 652 F.2d 146, 166 (D.C. Cir. 1980) (explaining that adequacy of process is determined "with reference to the characteristics of the group who have to use it")).

[27]  After appointing a guardian ad litem, a court maintains a continuing obligation to supervise the guardian ad litem's work.  Accord Dacanay v. Mendoza, 573 F.2d 1075, 1079 (9th Cir. 1978) ("It is the court's order approving the settlement that vests the guardian ad litem with the legal power to enforce the agreement"); Noe v. True, 507 F.2d 9, 12 (6th Cir. 1974) ('through a guardian ad litem the court itself assumes ultimate responsibility for determinations made on behalf of the [ward]").  Indeed, the court has the power to remove/substitute the appointed guardian ad litem, see Hull v. United States, 53 F.3d 1125, 1127 n.1 (10th Cir. 1995) (noting that parties seeking to challenge the decisions of a guardian ad litem have a remedy of applying to the court to have the guardian ad litem removed); Garrick v. Weaver, 888 F.2d 687, 693 (10th Cir. 1989) (denying standing to legal representative after appointment of a guardian ad litem, reasoning that proper remedy is to petition the court for removal), or choose not to approve the guardian ad litem's proposals.  See Dacanay, 573 F.2d at 1079.

## 2.   Guidance Provided in *Powell v. Symons*

A number of Rule 17(c) issues were addressed by the Court of Appeals in its recent Powell decision, which adopted the standard set forth in a Second Circuit case, Ferrelli v. River Manor Health Care Center, 323 F.3d 196, 201 (2d Cir.2003).   At the outset, the Powell court cautioned that "a district court need not inquire sua sponte into a pro se plaintiff's mental competence based on a litigant's bizarre behavior alone, even if such behavior may suggest mental incapacity," Powell, 680 F.3d at 307,[28] and a Rule 17(c) analysis might be warranted only if "there is verifiable evidence of incompetence" such as a public agency's determination indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent.[29]  Id. Hence, the holding of Powell might be read as suggesting that a competency determination must be made if there is evidence of the litigant's diagnosis of severe mental illness or presence of certain kinds of treatment for severe mental illness.[30]  See id.; cf. Allen v. Calderon, 408 F.3d

---

[28]   The Ferrelli court observed that "[p]arties to litigation behave in a great variety of ways that might be thought to suggest some degree of mental instability," and that there was no "necessary relationship between 'mental incompetence' [warranting a Rule 17(c) appointment] and various forms of mental derangement or personality disorder that may cause utterly bizarre and destructive conduct in litigation."  Ferrelli, 323 F.3d at 203 (quoting Hudnall v. Sellner, 800 F.2d 377, 385 (4th Cir.1986)).

[29]   Even when there is verifiable evidence of a litigant's incompetence, in some cases such evidence might be "sufficiently unpersuasive as to be rebutted by other evidence in the record, or by the district court's own experience with an unrepresented litigant."  Powell, 680 F.3d at 310.

[30]   While courts cannot play amateur psychologist, and the term "severe mental illness" is open to a broad range of constructions, it appears that a finding by a mental health professional that a litigant suffers of a "severe mental illness" does trigger Rule 17(c) review under Powell.

1150, 1153 (9th Cir. 2005) (finding abuse of discretion in failure to make a competency

determination when a litigant indicated he could not understand court instructions and submitted

letter from a psychiatrist stating that the litigant was schizophrenic).

Powell also provided district courts with important guidance as to when, within the life of

a case, a Rule 17(c) review must be conducted. Specifically, the Court of Appeals explained

that,

> once the [court's] duty of [Ruly 17(c)] inquiry is satisfied, [the] court may not weigh
> the merits of [the litigant's] claims . . . . Cf. Berrios v. N.Y.C. Hous. Auth., 564 F.3d
> 130, 134 (2d Cir.2009) (citing Gardner, 874 F.2d at 141) ("Because [the plaintiff, a
> severely mentally retarded teenager] was without a representative when the court
> dismissed her claims, and was otherwise unprotected, the court was without authority
> to reach the merits of those claims"); cf. also Sam M. ex rel. Elliott v. Carcieri, 608
> F.3d 77, 94 n.15 (1st Cir. 2010) (citing Adelman v. Graves, 747 F.2d 986, 989 (5th
> Cir. 1984), for the proposition that "the district court improperly dismissed the case
> without first determining whether the incompetent's interests were adequately
> represented).

Powell, 680 at 307-08 (footnote omitted).[31]

This guidance suggests that a judicial sua sponte screening of the challenges raised by a

litigant whose diagnosis of severe mental illness (or whose current treatment for a severe mental

illness) is verifiably known to the court would run afoul of the protections of Rule 17(c). See id.

## D.    Supplemental Pleading Providing a More Definitive Statement

It is axiomatic that, under Rule 8(a)(2) of Federal Rules of Civil Procedure, a civil

complaint must state sufficient factual heft to give defendant fair notice of what plaintiff's claim

are based on. See Ashcroft v. Iqbal, 129 S. Ct. 1937. This "notice pleading" standard was

---

[31]  Accord James v. New York, 415 F. App'x 295, 297 (2d Cir. 2011) (district court
abused its discretion by sua sponte dismissing a potentially incompetent litigant's claims with
prejudice, without conducting a Rule 17 review); Perri v. City of New York, 350 F. App'x 489,
491 (2d Cir. 2009) (same).

adopted to focus litigation on merits of claim and, with limited exceptions, applies to all civil actions, which adjudication relies on liberal discovery rules and summary judgment motions for the purpose of defining disputed facts and disposing of meritless claims.  See, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  However, "[i]f a pleading . . . is so vague or ambiguous that [the responding] party cannot reasonably be required to frame a responsive pleading, [the responding party] may move for a more definite statement" under Fed. R. Civ. P. 12(e) which is designed to strike at unintelligibility rather than want of detail.[32]  See, e.g., CMAX, Inc. v. Hall, 290 F.2d 736 (9th Cir. 1959); Robinson v. Penn Central, 336 F. Supp. 658 (E.D. Pa. 1971); Garza v. Chicago Health Clubs, Inc., 329 F. Supp. 936 (N.D. Ill.1971); Royal Indemnity Co. v. City of Erie, 326 F. Supp. 571 (W.D. Pa. 1971); Fairmont Foods Co. v. Manganello, 301 F. Supp. 832 (S.D.N.Y. 1969).  Although, as a typical scenario, the protections of Rule 12(e) are resorted to by responding parties making appropriate motions to the presiding tribunals, district courts occasionally resorted to Rule 12(e) sua sponte.  For instance, in Elliott v. Perez, 751 F.2d 1472, 1482 (5th Cir. 1985), the Fifth Circuit pointed out that the district court, when it finds that the complaint is not sufficient to permit a proper adjudication of the matter of immunity has the power, sua sponte, require a more definite statement under Rule 12(e).  Accord De Witt v. Pail, 366 F.2d 682, 685 (9th Cir. 1966) ("Failure, in an initial complaint, to set forth the claim by means of a short and plain statement, as required by Rule 8(a)(2), is not a ground for dismissal of an action with prejudice, since there are procedures available for correcting a vague or prolix

---

[32]  The 1946 amendment to Rule 12 deleted the reference to a "bill of particulars" in the language of the Rule, which used to state that "a party may move for a more definite statement or for a bill of particulars of any matter which is not covered with sufficient definiteness or particularity to enable him properly to prepare his responsive pleading . . . ."

complaint. Among such available procedures are those provided for in Rule 12(e) . . . .") (internal citations omitted).  Moreover, a <u>sua sponte</u> judicial directive for a more definite statement might be carefully tailored to the needs of each particular case and limited solely to assertion of the relevant factual matter, without fostering a legal argument. <u>Accord</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 310 (3d Cir. 2010) (discussing with approval district court's order instructing plaintiffs to file, in each of their two clusters of consolidated multi-state litigation cases, a so-called "supplemental statement of particularity" stating merely the relevant facts of their claims in a fashion largely analogous to that employed in the now-abolished tool of "bill of particulars"); <u>cf.</u> <u>Copeland v. Livingston</u>, 464 F. App'x 326, 328, n.1 (5th Cir. 2012) (discussing so-called <u>Spears</u> hearing, which is a measure adopted within the Fifth Circuit under <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and elaborated upon in <u>Eason v. Holt</u>, 73 F.3d 600 (5th Cir. 1996), for the purpose of determining the facts of plaintiff's challenges); <u>Leamer v. Fauver</u>, Civ. Action No. 95-5105 (GEB) (D.N.J.), Docket Entry No. 172 (directing an individual, who was held in confinement due to the workings of the statutory provision which was among the bases for promulgation of the Sexually Violent Predator Act, to file a supplement to his original and amended pleading with the goal of obtaining the exact facts of the individual's challenges).

In light of the foregoing, reading jointly the mandates of 28 U.S.C. § 1915(e)(1), Rules 12(e) and 17(c), the holding in <u>Anders v. California</u>, 386 U.S. 738, the due process concerns addressed in <u>Wisconsin v. Constantineau</u>, 400 U.S. 433, and <u>Mathews v. Eldridge</u>, 424 U.S. 319, and the guidance provided <u>Powell v. Symons</u>, 680 F.3d 301, and <u>United States v. Turner</u>, 677 F.3d 570, this Court concludes that a district judge – if presented with a scenario where there exists evidence of a litigant's current diagnosis of severe mental illness (or current treatment for

severe mental illness) – could direct, upon safeguarding the litigant's due process rights, an

appointment of pro bono counsel[33] for the limited purpose of filing a "supplemental statement of

particularity" that would elaborate on the *facts* asserted in the litigant's original pleading but

without making a legal argument.  Such filing would allow the court to: (a) liberally construe the

facts asserted in "supplemental statement of particularity," as if these facts were alleged by a pro

se litigant; and (b) upon screening these factual assertions pursuant to the standard of Rule 8, as

clarified in Iqbal, dismiss all meritless challenges (if any) sua sponte and proceed the remaining

meritorious challenges (if any) to service, potentially with a directive for permanent appointment

of guardian ad litem and/or pro bono counsel.

## III.   APPLICATION OF LEGAL CONSIDERATIONS TO THE CASES AT BAR

The cluster of cases at bar appears uniquely suited for application of the above-discussed

measure.  As the "Background" section of this Opinion demonstrates, Plaintiff's many cases

seemingly fail to assert any claims of arguable merit.  However, in light of Judge Simandle's

factual findings made in Bacon v. Burns (that Plaintiff suffers of a severe mental illness and is

currently undergoing treatment for this severe mental illness), this Court, out of an abundance of

caution, shall not summarily dismiss Plaintiff's challenges.  See Fed. R. Civ. P. 17(c); see also

---

[33]  The tool of limited appointment of counsel (or appointment of special counsel) is not uncommon at the juncture where the prudence of a permanent appointment of counsel cannot be established with a sufficient degree of certainty.  See, e.g., Percival v. Girard, 692 F. Supp. 2d 712, 725 ( E.D. Mich. 2010) ("the [State] Supreme Court issued an order calling for swift resolution of the case and ordered the trial court to investigate the advisability of appointing special counsel to represent the . . . prisoners"); accord Williams v. Ricci, 2011 U.S. Dist. LEXIS 51959 (D.N.J. May 13, 2011) ("pursuant to 18 U.S.C. § 3006A(a)(2)(B), this Court finds that appointment of counsel for Petitioner is in the interest of justice and will appoint such counsel for the limited purpose of representing Petitioner with regard to Petitioner's challenges raised in the first ground of his amended petition [while reserving the determination as to permanent appointment with regard to other Petitioner's grounds").

Powell v. Symons, 680 F.3d 301.  Rather, prior to screening Plaintiff's claims on merits, this Court finds itself obligated to: (a) determine Plaintiff's capacity to be the master of his claims and to litigate the same, see id.; accord Mathews v. Eldridge, 424 U.S. 319; Wisconsin v. Constantineau, 400 U.S. 433; and (b) in the event Plaintiff is found unfit to be the master of his claim, have a pro bono counsel appointed to Plaintiff for the purposes of filing a supplemental statement of particularity in each above-captioned case,[34] with the goal of clarifying to this Court solely the facts alleged by Plaintiff, see Anders v. California, 386 U.S. 738; United States v. Turner, 677 F.3d 570, and –  correspondingly – enabling this Court to screen these facts by liberally construing them as if they were asserted by Plaintiff proceeding pro se.  See Erickson v. Pardus, 551 U.S. 89; United States v. Day, 969 F.2d 39.

## IV.    CONCLUSION

The Court, therefore, being mindful of Plaintiff's due process rights and potential stigma ensuing from a Rule 17(c) finding of incompetence, will direct Plaintiff to show cause as to why he shall remain the master of his claims at this early pleading stage and why no special counsel shall be appointed to file supplemental statements of particularity in each above-captioned action.[35]  In the event Plaintiff fails to establish to the Court's satisfaction his fitness to be the

---

[34]  It appears that such filings, being limited solely to assertions of fact, would not qualify as a "quasi-Anders brief" within the meaning of Turner.

[35]  Plaintiff will be directed to submit his response to the Court's order to show cause in writing.  While the Court is acutely mindful of Plaintiff's mental condition, it appears that an evidentiary hearing is unnecessary at this juncture since – in the event Plaintiff cannot submit a lucid response to the order to show cause – the spirit and letter of Rule 17(c), as clarified in Powell, strongly prompts in favor of presumption that Plaintiff should be deemed incompetent to litigate his own claims and is best afforded assistance of counsel even for the purposes of such seminal task as assertion of factual predicate underlying his claims.

master of his claims, the Court will deem Plaintiff incompetent within the meaning of Rule 17(c)

and will direct the Clerk to appoint a pro bono counsel.  Such appointment, initially, will be

solely for the purpose of counsel's determination of facts underlying the particular challenges

asserted by Plaintiff in each above-captioned action and counsel's filing of supplemental

statements of particularity that would allow this Court to screen these matters and, if a factual

predicate supporting potentially meritorious claims is detected, proceed to service of process and,

if such measure is warranted, direct appointment of permanent pro bono counsel to Plaintiff.

Accord Williams v. Ricci, 2011 U.S. Dist. LEXIS 51959.

Correspondingly, the issue of whether Plaintiff shall be appointed pro bono counsel will

be reserved at this juncture and until the Court concludes its examination of Plaintiff's response

to the order to show cause for the purposes of Rule 17(c) review.

An appropriate Order accompanies this Opinion.[36]


 /s/ Joel A. Pisano
**JOEL A. PISANO**
**United States District Judge**


Dated:  September 14, 2012

---

[36]  In light of Plaintiff's recent flood of written submissions and multitude of his phone calls to the Office of the Clerk, the Court's Order accompanying this Opinion will provide measures allowing to preservation Plaintiff's rights and future submission and, simultaneously, conserve the Clerk's Office scarce resources.